No.  94-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995


STATE OF MONTANA,

          Plaintiff and Respondent,

     v.

RUDY STANKO,

          Defendant and Appellant.

FILED

NOV 14 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Russell K. Fillner, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

          Rudy Stanko, Pro Se, Laurel, Montana


          For Respondent:

               Hon. Joseph P. Mazurek, Attorney General,
               Kathy Seeley, Ass't Attorney General,
               Helena, Montana

               Dennis Paxinos, Yellowstone County Attorney,
               Dale R. Mrkich, Deputy Yellowstone County Attorney,
               Billings, Montana


                         Submitted on Briefs:  October 26, 1995

                                    Decided:  November 14, 1995

Filed:


                    _____
                    Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

Rudy Stanko (Stanko) appeals from the judgment and sentence entered by the Thirteenth Judicial District Court, Yellowstone County, on his conviction for five offenses. We affirm.

We restate the issues on appeal as follows:

1. Does the filing of charges via complaints, followed by a judicial determination that probable cause existed to file the charges, comport with Montana's Constitution and statutes?

2. Did the District Court's failure to hold an omnibus hearing deny Stanko's due process rights?

3. Did the District Court err in denying Stanko's motion for appointment of counsel?

4. Is § 45-7-302(1), MCA, unconstitutionally vague and overbroad on its face, or as applied to Stanko, and did the two counts of obstructing a peace officer, filed pursuant to that statute, violate Stanko's right to remain silent?

5. Can the State of Montana (State) fine Stanko for driving a vehicle not registered in Montana under the facts of this case?

6. Did the District Court err in allowing the State to amend a statutory reference in the complaint relating to an expired registration?

7. Do §§ 61-5-103 and 61-5-104(4), MCA, bar the State from prosecuting Stanko for driving without a valid driver's license in violation of § 61-5-102, MCA?

2

FACTS AND PROCEDURE

Stanko was cited into Justice Court in Billings, Montana, on five charges arising from separate lawful traffic stops on May 28 and May 30, 1993, by Montana Highway Patrol (MHP) officers. Two identical charges--obstructing a peace officer and operating a vehicle without a valid driver's license--resulted from each of the two traffic stops; the fifth charge, operating a vehicle without a valid registration, stemmed from the May 28, 1993, stop.

Following proceedings and a jury trial in Justice Court, during portions of which Stanko was represented by a court-appointed public defender, the jury found him guilty on all five charges. Pursuant to § 46-17-311, MCA, Stanko appealed to the District Court for a trial de novo.

A jury trial was held in the District Court and Stanko was again convicted of all the charged offenses. The District Court entered judgment on October 5, 1994. Stanko appeals.

DISCUSSION

1. Does the filing of charges via complaints, followed by a judicial determination that probable cause existed to file the charges, comport with Montana's Constitution and statutes?

Stanko contends that commencing a prosecution by filing a complaint violates both statute and the Constitution; his fundamental premise seems to be that a grand jury indictment was the mandatory method of initiating prosecution of the charges against him. While Stanko's "argument" on this issue is relatively lengthy, it largely consists of rhetorical questions rather than legal citation and analysis and does not address or distinguish

3

controlling authority.

Article II, Section 20, of the 1972 Montana Constitution specifically provides that:

> [c]riminal offenses within the jurisdiction of any court inferior to the district court shall be prosecuted by complaint. All criminal actions in district court, except those on appeal, shall be prosecuted either by information, after examination and commitment by a magistrate or after leave granted by the court . . . .

Stanko does not address this constitutional authorization for the procedure used by the State in this case or even suggest that the constitutionally authorized procedure was not followed here.

Moreover, even absent specific constitutional authorization, § 46-11-201, MCA, statutorily authorizes a prosecutor to proceed in district court via complaint or by information after leave of court has been granted. Stanko does not assert that the statutory requirements were not satisfied.

We have repeatedly and consistently held that criminal charges brought by information, after a magistrate's hearing or by leave of a district court, are authorized and permitted by both statute and the Montana Constitution. See, e.g., State v. Corliss (1967), 150 Mont. 40, 43, 430 P.2d 632, 634, cert. denied, 390 U.S. 961, (1968). With regard to the United States Constitution, the United States Supreme Court has stated that "[e]ver since *Hurtado v. California*, 110 U.S. 516 (1884), this Court has consistently held that there is no federal constitutional impediment to dispensing entirely with the grand jury in state prosecutions." Beck v. Washington (1962), 369 U.S. 541, 545, 82 S.Ct. 955, 957, 8 L.Ed.2d 98, 104.

4

Stanko presents no authority or analysis which attempts to distinguish this body of authority, much less render it incorrect; his argument on this issue is without merit. We conclude that the filing of complaints, followed by a judicial determination that probable cause existed to file the charges, comports with Montana law and the Constitution.

2.    Did the District Court's failure to hold an omnibus hearing deny Stanko's due process rights?

It is undisputed that the District Court scheduled an omnibus hearing in this case and that the hearing did not take place. It also is undisputed that such a hearing is required by § 46-13-110, MCA, to expedite procedures leading up to the defendant's trial.

Stanko contends that the failure to hold an omnibus hearing denied him due process. He presents no authority whatsoever for his conclusory contention. Such authority is required in an appellant's opening brief by Rule 23(a)(4), M.R.App.P. We recognize that Stanko appears before us pro se and have made reasonable accommodation for minor departures from the Montana Rules of Appellate Procedure. Stanko is hardly unfamiliar with judicial proceedings and procedures, however, and we will not create an appellant's legal arguments for him or her.

In any event, as the State points out, this Court does not reverse trial courts for error "unless the record shows that the error was prejudicial[;]" we disregard any defect not affecting a party's substantial rights. Section 46-20-701, MCA. Under the statute, the party asserting the error clearly bears the burden of establishing prejudice on the record. Stanko makes no reference to

5

anything in the record establishing that he was prejudiced by the District Court's failure to hold an omnibus hearing; indeed, his argument on this issue begins and ends with the bare allegation that the failure "denied defendant due process in this case."

We conclude that the District Court's error in failing to hold an omnibus hearing was harmless and did not affect Stanko's substantial rights.

3. Did the District Court err in denying Stanko's motion for appointment of counsel?

As noted above, the Justice Court appointed counsel for Stanko. The court did so, notwithstanding Stanko's refusal to fill out the application for court-appointed counsel, "in the best interests and expedition of Justice. . . ." Thereafter, Stanko apparently discharged his counsel and the public defender's office moved to withdraw from further representation. The Justice Court permitted the withdrawal and required Stanko to comply with § 46-8-111(2), MCA, so that, in turn, it could make the required "determination of indigence" pursuant to subsection (1) of that statute. Stanko refused, the court did not appoint counsel and Stanko proceeded pro se.

On appeal to the District Court, Stanko moved for appointment of counsel. After Stanko refused to provide the information required by § 46-8-111(2), MCA, the District Court denied his motion and Stanko continued pro se except for limited assistance from a purported member of the Iowa bar.

In essence, Stanko concedes that he did not comply with the statutory requirements, but argues that the constitutional right to

counsel does not authorize or permit the State to decide not to provide counsel to a criminal defendant absent a showing of indigence. Stanko presents no authority under which the constitutional right of criminal defendants to counsel has been interpreted to mean that the State must provide counsel free of charge to all criminal defendants or that every criminal defendant who requests counsel at the State's expense is absolutely and constitutionally entitled to appointment of such counsel.

No applicable authority being presented, we need not further address this issue. We conclude that, in light of Stanko's refusal to submit the sworn financial statement evidencing his inability to obtain legal representation which is required by § 46-8-111(2), MCA, the District Court did not err in denying his motion for appointed counsel.

4. Is § 45-7-302(1), MCA, unconstitutionally vague and overbroad on its face, or as applied to Stanko, and did the two counts of obstructing a peace officer, filed pursuant to that statute, violate Stanko's right to remain silent?

Two charges of obstructing a peace officer were filed against Stanko pursuant to § 45-7-302(1), MCA, which states:

> A person commits the offense of obstructing a peace officer or public servant if he knowingly obstructs, impairs, or hinders the enforcement of the criminal law, the preservation of the peace, or the performance of a governmental function.

The charges stemmed from Stanko's refusal to give the MHP officer his name during the first traffic stop and giving the officer a false name during the second stop. Presumably based largely on the testimony of the officers involved, the jury found that the State had proved each element of each of the two obstructing charges

7

beyond a reasonable doubt and convicted Stanko on both charges.

Stanko does not assert that either of the traffic stops was invalid or unlawful or that insufficient evidence existed upon which the jury could find the elements of the offenses beyond a reasonable doubt. He presents somewhat murky constitutional arguments that the statute defining the offense is unconstitutional for vagueness and overbreadth on its face, and as applied, and that it violates his constitutional right to remain silent.

A statute duly enacted by the legislature is presumed to be constitutional, and we will uphold the statute unless the party challenging it establishes unconstitutionality beyond a reasonable doubt. State v. Lilburn (1994), 265 Mont. 258, 262, 875 P.2d 1036, 1039, cert. denied, 115 S.Ct. 726 (1995).

Stanko's various positions regarding the unconstitutionality of the statute, on its face and as applied, neither meet that burden nor raise sufficient colorable argument to necessitate a full constitutional analysis. Stanko cites to no precedential or even persuasive authority holding unconstitutional a statute requiring a person lawfully stopped for traffic violations to identify himself or herself to a peace officer.

Neither the "entrapment" cases nor the "contradictory commands" cases Stanko cites are applicable in any way to the facts of this case. In addition, Stanko does not support his bare assertion that the statute at issue criminalizes either "being a driver" or "mere conversation;" thus, the cases cited which relate to statutes or situations of those kinds also are inapplicable.

8

Stanko does argue the applicability of the underlying principles contained in Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, vis-a-vis his contention that charging him with "obstructing" for refusing to identify himself on one occasion and giving a false name on the second occasion violated his Fifth Amendment freedom from compulsion to be a witness against himself. However, he does not analyze how his decisions to refuse to identify himself and to falsely identify himself constitute or equate to violations by the State of the Fifth Amendment right he characterizes as his "right to remain silent." Nor does he analyze how and when the actual Miranda warning is required during a valid traffic stop before a driver can be asked to identify himself.

We conclude that Stanko has not established the unconstitutionality of § 45-7-302(1), MCA, beyond a reasonable doubt and, further, has not established any infringement of his Fifth Amendment rights.

5. Can the State fine Stanko for driving a vehicle not registered in Montana under the facts of this case?

The entirety of Stanko's position regarding this issue is as follows:

> The State of Montana cannot constitutionally and legally fine the defendant pursuant to 61-3-315 for driving a foreign registered vehicle in the State of Montana because it was not registered in Montana, when the State does not have a reciprocity agreement with the State of Washington pursuant to Part 7 of Chapter 3 of Title 61.

No contentions, argument or legal authority in support of this position are presented as required by Rule 23(a)(4), M.R.App.P. Moreover, the record does not reflect that Stanko raised this issue

via motion or otherwise in the District Court. Absent limited exceptions not applicable here, defendants are barred from raising issues on appeal which were not presented to the district court for initial resolution. See, e.g., § 46-20-104(2), MCA; State v. Arlington (1994), 265 Mont. 127, 151, 875 P.2d 307, 321. For these reasons, we decline to address this issue

6. Did the District Court err in allowing the State to amend a statutory reference in the complaint relating to an expired registration?

The May 28, 1993, notice to appear and complaint charged Stanko with driving a vehicle with an expired registration under § 61-3-315, MCA. The complaint described the relevant time and place, and the vehicle Stanko was driving; it also included the Washington license number, "with expired registration[.]" At the time jury instructions were being settled, the District Court allowed the State to amend the citation to allege a violation of § 61-3-301, MCA, the correct statutory reference. The court determined that the variance between the two statutory references was not material.

The entirety of Stanko's position on this issue is as follows:

> The State of Montana cannot charge the defendant with a different statute after the evidence was presented to the jury, and the defendant was prepared to defend the statute that the policeman had originally cited and charged.

Again, as with the previous issue, no contentions, argument or legal authority are presented as required by Rule 23(a)(4), M.R.App.P. Therefore, we decline to address this issue.

7. Do §§ 61-5-103 and 61-5-104(4), MCA, bar the State from prosecuting Stanko for driving without a valid driver's license in

**violation** of § 61-5-102, MCA?

The entirety of Stanko's position regarding this issue is as follows :

> The State of Montana cannot charge the defendant for driving without a Montana license, when the defendant was not in the State for at least 90 days pursuant to 61-5-103 and 61-5-104(4).

As with the previous two issues, Stanko presents no contentions, argument or authority as required by Rule 23(a)(4), MCA. Nor does he present any evidence of record regarding factual matters supporting his position. Therefore, we decline to address this issue.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

11

November 14, 1995

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Rudy Stanko
1315 Allendale Road
Laurel, MT 59044

HON. JOSEPH P. MAZUREK, Attorney General
Kathy Seeley, Assistant
Justice Bldg.
Helena, MT 59601

Dale R. Mrkich
Deputy County Attorney
P.O. Box 35025
Billings, MT 59107

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _A. Gallagher_
Deputy